# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | )    Bankruptcy Case 20-80596 |
| Anthony S. Esposito, | ) |
| | )    Chapter 7 |
| Debtor. | ) |
| | )    Judge Lynch |
| | ) |
| Ferris, Thompson and Zweig, Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    Adversary No. 20-96031 |
| Anthony S. Esposito, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

The law firm Ferris, Thompson and Zweig, Ltd. brings a second amended complaint following the dismissal of its previous pleading for failure to state a claim. (*See* Minute Order, ECF No. 49.) The second amended complaint continues to seek a determination of nondischargeability under sections 523(a)(4) and 523(a)(6) of the Bankruptcy Code and judgment for sums, the Plaintiff contends, are due it under referral agreements for several workers compensation cases the Debtor handled. The

Debtor again moves to dismiss under Rule 12(b)(6).[1] (Mot. to Dismiss, ECF No. 52.) For the reasons stated below, the Debtor's motion will be granted.

MATTERS OUTSIDE THE PLEADINGS

Before turning to the merits, the court will first address a procedural issue to clarify what materials are properly before it.   "[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 2004).  When ruling on a Rule 12(b)(6) motion, the court may consider only "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c)).  "If documents outside the pleadings are placed before the court on a Rule 12(b)(6) motion, the court must either exclude such documents or convert the motion to dismiss to a motion for summary judgment and afford the plaintiff an opportunity to submit additional evidentiary material." *Joe Hand Promotions, Inc. v. DeMarco*, No. 11 CV 8569, 2012 WL 3686790, at *1 n.2 (N.D. Ill. Aug. 24, 2012); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the

---

[1] The Debtor's motion to dismiss fails to consider the court's comments found in the Minute Order of dismissal and repeats arguments that should not have been raised again. (*See* Minute Order at 3 n.3 (noting the "significant portion" of Debtor's motion discussing inapplicable cases).)  Indeed, much of the current motion to dismiss appears to have been simply cut-and-pasted from the Debtor's earlier motion.  In spite of these shortcomings, the court finds it appropriate to dismiss the second amended complaint for the reasons stated in this Memorandum Opinion.

pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Here, the parties submitted various exhibits with their submissions on this motion. The court has reviewed those exhibits for the limited purpose of determining whether they are properly before it or should be viewed as "matters outside the pleadings" for purposes of Rule 12(d).[2]

With its motion, the Debtor attempts to introduce copies of pleadings filed by the parties in their previous litigation in Lake County, Illinois. (Mot. to Dismiss Exs. 1A and 1B.) Those documents are neither based on the adversary complaint itself or attached to it. Nor are they critical to the complaint or referred to in it. *See Geinosky*, 675 F.3d at 745 n.1. Indeed, the only explicit reference to the state court litigation in the second amended complaint is the undisputed statement that "Plaintiff attempted to collect the money owed by filing suit in state court" and that he incurred costs and fees by filing and pursuing that action. (Sec. Am. Compl. ¶¶ 24 and 55, ECF No. 50.) Unlike its previous complaint, the Plaintiff no longer incorporates by reference the

---

[2] Plaintiff attached Group Exhibit A to its Second Amended Complaint, reportedly consisting of copies of the contracts between Plaintiff and the Debtor. Because these documents are attached as an exhibit to the complaint, they are considered "part of the pleading for all purposes" and will be considered by the court when ruling on the motion to dismiss. Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bankr. P. 7010). The court further notes that while there may be a dispute over the interpretation or effect of these contracts, the parties do not appear to dispute that these are the operative contracts underlying Plaintiff's claims in this adversary proceeding and in the pending state-court litigation.

allegations of its Lake County pleadings. As such, the Debtor's exhibits relate to matters outside the pleadings and may not be considered for purposes of this motion.[3]

The parties continued to present extraneous materials to the court in their subsequent submissions on the motion. With his reply memorandum, the Debtor attached a copy of an email exchanged between counsel on July 6, 2021, nearly two months after Plaintiff filed the second amended complaint and self-evidently not a part of it. (Reply Ex. A, ECF No. 63.) In its sur-reply (styled "Sur-Response"), the Plaintiff attached several documents related to the state court litigation, including copies of the Debtor's briefs to various tribunals, a decision by the Illinois Supreme Court, and transcripts from court proceedings. (Sur-reply Exs. A through E, ECF No. 69.) While a plaintiff opposing a Rule 12(b)(6) motion is allowed somewhat more flexibility, none of these documents are referenced in or material to the pending complaint, and they do not assist the court in determining whether the second amended complaint states a plausible claim for relief.[4]

When, as here, documents outside the pleadings are attached to a motion to dismiss or other briefs, the court has discretion to "either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and

---

[3] The Debtor also attached Group Exhibit 2 to his motion to dismiss, but that is merely excerpts from Plaintiff's Group Exhibit A and need not be considered separately.

[4] Plaintiff has also recently moved to withdraw Exhibit E to its sur-reply and replace it with Exhibits F and G, which are portions of trial transcripts. (ECF No. 74) Since those documents would also be improper for the court to consider when ruling on the Rule 12(b)(6) motion, the motion is denied.

continue under Rule 12." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *see also In re Demopoulos*, No. 07-71355, 2008 WL 4489153, at *6 (Bankr. N.D. Ill. Sept. 23, 2008) ("The court has complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion to one for summary judgment, or to reject the extra-pleading material and simply not consider it."). During a hearing on the motion to dismiss, the court questioned counsel whether they were prepared to proceed under Rule 56 in accordance with Rule 12(d). The court considered the attorneys' mixed responses and ruled that conversion is not appropriate under the circumstances. (*See* Order ¶ 1, ECF No. 73.)[5] The court has not been presented with any basis to reconsider its determination and, therefore, will exclude from its consideration the matters identified above which are outside the pleadings.

## BACKGROUND

The underlying dispute between the parties first arose over a decade ago. The second amended complaint realleges the principal factual allegations contained in the previous complaint. Suffice to say that Plaintiff believes it is owed $46,192.42 plus

---

[5] In the Order, the court gave the parties an additional opportunity to file a statement specifying, with citation to authority, whether their exhibits should be considered part of the pleadings or excluded from the court's consideration and warned that "[f]ailure to file a statement with the specificity required . . . will result in those apparently extraneous materials being excluded." (Order ¶ 2.) Neither party filed a statement within the time allotted. Plaintiff eventually filed a statement approximately three weeks late, which will be stricken as untimely, although it would not have changed the determination reached in this Memorandum Opinion.

interest for its contractual share of attorney's fees obtained for certain workers compensation cases referred by the Plaintiff to the Debtor.

According to the second amended complaint, the parties entered into a "series of contracts" for the referrals. (Sec. Am. Compl. ¶ 3.)  Nine sets of signed form instruments, the purported attorney agreements, are attached to the second amended complaint. (*Id.* Ex. A.)  Each set consists of a letter (in English) from the Debtor to the Plaintiff setting out the terms and conditions of the referral of an individual case showing the Plaintiff's signed acceptance, together with a "*Contrato de Abogado Y Cliente*" purportedly executed by the Debtor, the Plaintiff, and individual clients. (*Id.*)  Each of the Debtor's letters provides that the Debtor will be responsible for the referred workers compensation claim while the Plaintiff's office shall assist on an as-needed basis with "client contact," the "preparation of initial interviews and document preparation," as well as translation services. (*Id.*)  Each letter goes on to state:

> Legal fees in this matter will be shared by our offices based on our respective contributions in the handling of this case. We have agreed that my office shall receive fifty five percent (55%) of all attorney fees plus reimbursement for costs advanced by our office.  Your office shall receive forty five percent (45%) of all attorney fees received as the result of this Worker's Compensation claim.

(*Id.*)

As discussed below, the second amended complaint alleges that a dispute arose over the Plaintiff's separate referral of the workers compensation clients to a certain doctor for treatment and the Debtor's threatened retaliation if the Plaintiff did not stop doing business with that doctor:

12.   At the conclusion of Debtor's meetings [on July 8, 2010] with those Plaintiff-referred Clients, Debtor told Plaintiff that he would no longer pay one of the treating physicians to whom Plaintiff referred its clients for the services provided to the Clients.

. . . .

17.   Debtor stated: "I'm not going to pay, I'm not going to pay. You need to choose. I want you to stop doing business with him or you can stop doing business with me."

18.   Plaintiff responded that it was not going to stop doing business with the Doctor because of Debtor's personal problems with the Doctor.

19.   Debtor informed Plaintiff that he would no longer do business with Ferris Thompson.

(*Id.* ¶¶ 12-19.) The Debtor allegedly made good on his threat and the Plaintiff did not receive fees for referred cases after the 2010 meeting. (*Id.* ¶ 22.)

The second amended complaint differs from the previous complaint in two notable ways. First, Plaintiff now asserts throughout the complaint that it "had a property interest in 45% of the attorneys' fees awarded" in cases that had been referred to the Debtor. (*Id.* ¶ 8; *see also id.* ¶¶ 28, 39, 40, 44, 46.)[6]

The second noteworthy addition involves new allegations about how and why the parties' relationship came to its bitter conclusion. According to Plaintiff, the Debtor wanted Plaintiff to stop referring clients to a particular doctor because "the Doctor was dating a woman who Debtor used to date, and with whom Debtor wanted to reunite." (*Id.* ¶ 13.) As noted above, the Debtor allegedly gave Plaintiff his ultimatum accompanied by "extreme profanity." (*Id.* ¶¶ 17-18.) The Plaintiff further

---

[6] Similarly, Plaintiff alleges in the second amended complaint that the Debtor's refusal to pay Plaintiff its portion of the attorney's fees injured or impaired Plaintiff's "property rights." (Sec. Am. Compl. ¶¶ 53, 56.)

alleges that the Debtor's subsequent retention of the attorney's fees was "based solely on a personal grudge against a doctor" and done with the intent to "monetarily injure Plaintiff." (*Id.* ¶¶ 50-52.)

The second amended complaint also alleges for the first time the underlying substantive grounds for excepting its debt from discharge. Count I now avers that the Debtor's actions constitute embezzlement for purposes of section 523(a)(4). (*Id.* ¶ 35.) Likewise, Count II pleads that the Plaintiff's refusal to pay the fees claimed constitutes "common law conversion." (*Id.* ¶ 45.)

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The court is required at this stage to "accept all well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiffs' favor." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). However, "[l]egal conclusions do not get the same benefit" and may be disregarded. *Id.*; *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Count I.  As discussed in the court's Minute Order dismissing the previous complaint, section 523(a)(4) excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Count I, as now amended, relies on the theory that the debt owed the Plaintiff is nondischargeable "by reason of the Debtor's embezzlement." (Sec. Am. Compl. ¶¶ 35, 36.)  For purposes of section 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom that property has been entrusted or into whose hands it has lawfully come." *In re Weber,* 892 F.2d 534, 538 (7th Cir. 1989). Thus, to "constitute embezzlement, the fraudulent appropriation must be 'of another's property.'" *Banco Popular, N.A. v. Rodriguez* (*In re Rodriguez*), No. 06-3467, 2007 WL 543750, *5 (Bankr. S.D. Tex. Feb. 15, 2007).

It necessarily follows that "[o]ne cannot embezzle one's own property." *Anzalone v. Dulgerian* (*In re Dulgerian*), 388 B.R. 142, 151 (Bankr. E.D. Pa. 2008). As Judge Perkins explained in *Freer v. Beetler,* "[b]y definition, before a creditor can make a claim of nondischargeability for embezzlement, she must show that the property allegedly embezzled was her property.  The creditor's ownership of the funds is what distinguishes an embezzlement from a mere debtor-creditor relationship . . . ." (*In re Beetler*), 368 B.R. 720, 727 (C.D. Ill. 2007) (citations omitted).  "Where the parties' conduct indicates a debtor / creditor relationship, funds that come into the hands of the debtor belong to him and any subsequent use of them is not embezzlement." *Ellsworth v. Carmichael* (*In re Carmichael*), No. 18-5010 MPP, 2018 WL  4201750, at *9 (Bankr. E.D. Tenn. August 14, 2018) (quoting *United Am.*

*Ins. Co. v. Koelfgen* (*In re Koelfgen*), 87 B.R. 993, 998 (Bankr. D. Minn. 1988)); *see also Imperial Roofing, Inc. v. Schumacker* (*In re Schumacker*), No. 18bk33669, 2021 WL 3552333, at *6 (Bankr. N.D. Ill. July 15, 2021) (noting that "courts have been hesitant to hold that intangible property, such as services, can be embezzled" for purposes of section 523(a)(4)).

The seconded amended complaint, like its predecessor, fails to allege sufficient facts to support the predicate embezzlement claim. As amended, the pleading alleges in Count I that Mr. Esposito failed to remit to the Plaintiff the portion of the attorney's fees due it under the referral agreements. Nothing in those agreements suggest, for example, that the workers compensation fees and reimbursements were not paid by third parties to the Debtor, indicating instead only that the Plaintiff's was to receive a percentage from the amounts awarded. Nor is it alleged, for example, that the Debtor maintained a segregated account for the benefit of the Plaintiff. "When there is no requirement that the debtor segregate the funds, courts have consistently found the relationship to be merely that of debtor-creditor" and "the default by failure of defendant to remit sales proceeds is an *open account in debt* and *not an obligation for* embezzlement." *McCreary v. Kichler (In re Kichler)*, 226 B.R. 910, 914 (Bankr. D. Kans. 1998); *see generally Koelfgen*, 87 B.R. at 998 (independent contractor's wrongful retention of insurance premiums did not constitute embezzlement for purposes of § 523(a)(4)).

The second amended complaint instead alleges a debtor-creditor arrangement whereby the Debtor was supposed to remit to the Plaintiff a portion of funds coming

into the Debtor's possession from a third party. As such, the Plaintiff fails to plausibly allege facts that indicate that the Debtor's refusal to turn over the law firm's share from the fees awarded constitutes embezzlement. *See, e.g., Carmichael*, 2018 WL 4201750, at *9. The second amended complaint, therefore, fails to support an essential element to maintain the section 523(a)(4) claim, the alleged embezzlement. Accordingly, the additional allegations regarding the Debtor's intent are immaterial. *See Kichler,* 226 B.R. at 915.

Because the well-pleaded allegations in the amended Count I continue to allege only a simple, albeit willful, breach of contract claim, they do not support a claim for embezzlement under section 523(a)(4). *See Schaul v. Ludwig (In re Ludwig)*, 508 B.R. 48, 56 (Bankr. N.D. Ill. 2014) ("[K]eeping money contractually due another is a breach of contract, not embezzlement."). Accordingly, the Debtor's motion to dismiss will be granted as to this count.

**Count II**. The motion also will be granted as to Count II. In dismissing the first amended complaint, the Minute Order set out the requirements to state a claim under section 523(a)(6), emphasizing that "[a]n intentional breach of contract is not enough to support a claim under § 526(a)(6) unless the debtor's conduct also gives rise to an independent tort." (Minute Order at 4 (quoting *United Providers, Inc. v. Pagan* (*In re Pagan*), 564 B.R. 324, 326 (Bankr. N.D. Ill. 2017) ("[T]he Seventh Circuit has concluded at least twice that a claim based on an intentional breach of contract cannot meet the willful and malicious test under § 523(a)(6).")).) The second amended complaint attempts to address this deficiency by supplying the legal conclusion that

the Debtor's failure to pay the referral fees "amounts to common law conversion of the fees." (Sec. Am. Compl. ¶ 48). With that it includes the new allegations discussed above which assert a property interest in "45% of the attorney fees awarded" and the events purportedly surrounding the Debtor's refusal to pay this share. These changes are insufficient.

To state a claim for conversion under Illinois law, the plaintiff must plead that

> (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.

*Joe Hand Promotions, Inc. v. Lynch,* 822 F. Supp. 2d 803, 806 (N.D. Ill. 2011) (quoting *Cirrincione v. Johnson*, 184 Ill. 2d 109, 234 (1998)). The Seventh Circuit has concluded that in an action for conversion under Illinois common law "property" is generally defined to mean tangible property, and that "Illinois courts do not recognize an action for conversion of intangible rights." *Am. Nat'l Ins. Co. v. Citibank, N.A.*, 543 F.3d 907, 910 (2008). *See also In re Thebus*, 108 Ill. 2d 255, 260 (1985) ("[T]he subject of conversion is required to be an identifiable object of property . . . .").

The second amended complaint does not plausibly allege this property interest. Instead, it reiterates a breach of the referral agreements, characterizing it to be willful and malicious and, by its incorporation of the several agreements, acknowledges that the funds at issue are a debt owed by the engaged attorney, and not by the individual client nor the workers compensation fund nor another third party. The second amended complaint does not allege, for example, that the funds were paid specifically for work performed by Plaintiff. Nor does it allege such things

as the Plaintiff being identified and listed as a payee on the workers compensation awards, that the funds were designated for deposit into a segregated account for the benefit of the Plaintiff, or that the funds were merged into a document or other tangible thing which has been converted. *See One-On-One Fitness Personal Training Serv., Inc. v. Reyes* (*In re Reyes*), No. 09 A 1277, 2010 WL 2757180, at \*4 (Bankr. N.D. Ill. July 13, 2010).

The reference in Count II to a 1996 Illinois appellate decision, (Sec. Am. Compl. ¶ 48 (citing *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 282 Ill. App. 3d 1052, 1057 (1996))), does not suggest otherwise. Momentarily putting aside for purposes of discussion the conclusory nature of such a reference in the pleading contrary to Fed. R. Civ. P. 8(a), the decision cited, while not binding on this court, serves to illustrate Count II's failure to state a claim for conversion. In *Roderick*, a beneficiary of a trust sought to recover its interest in purchase agreement proceeds. The defendant bank applied the proceeds when received to pay down a separate debt under an agreement to which the plaintiff was not a party. The *Roderick* court concluded that the fund in question "was *not a debt* and was, therefore, subject to conversion." *Id.* at 1060 (emphasis added). Here the Plaintiff pleads the opposite situation, namely that the funds it claims under its referral agreement are in fact the indebtedness which the Debtor owes the referring law firm. The alleged relationship of the parties admittedly being one of debtor and creditor, the second amended complaint fails to state a claim for conversion under Illinois law.

"It is not enough for a debtor to commit an intentional act that leads to injury; the injury itself must be deliberate or intentional for a debt to be excepted from

13 of 14

discharge under this section." *Wilson v. Allen (In re Allen)*, No. 13-cv-01907, 2014 WL 4594440, at *3 (S.D. Ind. Sept. 15, 2014) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).  Lacking well-pleaded allegations that the refusal to pay the referral fees rises above an intentional breach of contract to state an independent tort, the second amended complaint does not state a claim for relief under section 523(a)(6).  Accordingly, Count II will also be dismissed.

However, after further consideration, the Court will allow the Plaintiff one last opportunity to amend its complaint if, after careful review of this opinion and the authority cited, it can do so consistent with Bankruptcy Rule 9011.

## CONCLUSION

For the reasons discussed above, the motion to dismiss the second amended complaint will be granted.  Counsel may file a further amended complaint within 14 days of this order, if appropriate.  If no amended pleading is filed within the time allowed, the dismissal will be with prejudice and this case will be closed without further notice.

A separate order will be issued concurrent with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: November 12, 2021

ENTER

Thomas M. Lynch
United States Bankruptcy Judge

14 of 14