UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case 20-80596 |
| Anthony S. Esposito, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Lynch |
| | ) | |
| Ferris, Thompson and Zweig, Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary No. 20-96031 |
| Anthony S. Esposito, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION

Before this court once again is Plaintiff's claim that an alleged debt owed to it by the Debtor is non-dischargeable. According to the allegations raised in the third amended complaint, the underlying dispute between Plaintiff, a law firm, and the Debtor, an attorney, first arose sometime around 2010 when the Debtor allegedly stopped paying Plaintiff a percentage of the attorney's fees awarded in several workers compensation cases that it had referred to the Debtor. Plaintiff believes the Debtor's refusal to pay was a breach of the contracts the parties made for each referral; the Debtor thinks otherwise. The underlying merits of that dispute,

however, are not before this court, and the court expresses no opinion on that matter.

Instead, the issue in this adversary proceeding is whether any debt determined by the state court in still-pending litigation over those contracts is exempt from discharge under section 523(a) of the Bankruptcy Code.  But in spite of it being afforded multiple opportunities to show through its pleadings how this debt arises out of something more than a breach of contract, and to state a plausible claim for relief under section 523(a), Plaintiff has once again failed to do so.  Such being the case, this court finds that further attempts to amend the complaint at this point would be futile and unduly prejudicial to the Debtor.  Accordingly, for the reasons stated below, the pending motion to dismiss the third amended complaint will be granted with prejudice.

## BACKGROUND

While after multiple rounds of pleading this court is quite familiar with the background facts, the facts considered in this opinion are taken only from the pending third amended complaint unless otherwise noted. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void.").  While the court will not repeat its discussion of the requirements for withstanding a Rule 12(b)(6) motion found in its earlier decisions, it bears emphasis that, in reviewing a motion to dismiss, the court must "accept all well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiffs' favor." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

However, "[l]egal conclusions do not get the same benefit" and may be disregarded. *Id.*

The Debtor is an attorney who concentrates his practice on workers compensation cases. (3d Am. Compl. ¶ 2, ECF No. 88.)  From 1991 through 2010, Plaintiff and the Debtor entered into a "series of contracts" in which "Plaintiff referred its workers compensation cases to Debtor, and Debtor promised to pay Plaintiff a share of the fees for the claims recovered." (*Id.* ¶¶ 3, 6.)  In particular, the contracts provided that "Plaintiff would receive 45% of any attorneys' fees awarded to the Debtor" in the referred cases. (*Id.* ¶ 4; *see also id.* Ex. A.)  Before their relationship deteriorated, Plaintiff had referred more than 600 clients to the Debtor, and the Debtor had paid Plaintiff the agreed-upon percentage of awarded attorney's fees, 45%, based on these written referral agreements. (*Id.* ¶¶ 11-12.)

The parties' working relationship changed on or around July 8, 2010.  At that time, the Debtor was working on more than 25 cases for clients that had been referred to him by Plaintiff.  At least 10 of those cases were "resolved" after July 8, 2010.[1] (*Id.* ¶ 13.)  Despite Plaintiff's demand for payment of 45% of the attorney's fees recovered in those cases, the Debtor "refused to pay Plaintiff its contractual portion of the

---

[1] By alleging at least 10 of the cases were "resolved," it is likely Plaintiff means that is how many of the pending cases resulted in a favorable outcome with attorney's fees being awarded to the Debtor. Attached to the third amended complaint as Exhibit A is a series of 11 letters confirming the parties' fee-sharing agreement for the named clients and the corresponding written consent of those clients. Although it is not entirely clear from the current pleading, the court assumes that these are the contracts which form the basis of the dispute between the parties.

recovery." (*Id.* ¶ 14.) As a result, Plaintiff alleges it is entitled to a total of $46,192.42 plus statutory interest from the Debtor. (*Id.* ¶ 15.)

On March 20, 2020, the Debtor filed his chapter 7 petition. He listed in his schedules, among other things, an unsecured claim of Plaintiff, Ferris Thompson Zweig, Ltd., in the amount of $46,278.11. He marked that claim as disputed.[2] It is apparent, therefore, that despite the extensive litigation that had occurred in state court before the bankruptcy filing (*see id.* ¶¶ 16-17), the parties' underlying contractual dispute remained unresolved as of the petition date. On July 6, 2020, Plaintiff filed its initial adversary complaint seeking a determination that any debt arising out of the pending state court litigation be found non-dischargeable under sections 523(a)(4) and (a)(6). The chapter 7 trustee filed a no-asset report and on July 14, 2020, the Debtor was granted a discharge. Thus, this adversary proceeding appears to be the only thing preventing the bankruptcy case from closing.

On August 20, 2020, the Debtor filed his first motion to dismiss the adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) Before briefing on the motion, and at the Plaintiff's request, the complaint was dismissed without prejudice and with leave for Plaintiff to file an amended complaint. (ECF No. 22.)

---

[2] There is no explanation in the record for the slight variation between the amount of Plaintiff's claim listed on Schedule E/F and the amount alleged in the third amended complaint in this adversary proceeding.

On November 25, 2020, Plaintiff filed an amended complaint, once again seeking a determination that any debt arising out of its pending lawsuit was non-dischargeable pursuant to sections 523(a)(4) and (a)(6). (ECF No. 25.) In particular, Plaintiff alleged that the Debtor's retention of the entire attorney's fee awarded in each referred case constitutes embezzlement for purposes of section 523(a)(4), and that the Debtor's failure to pay the money he owed Plaintiff was a willful and malicious injury for purposes of section 523(a)(6). (*Id.*) The Debtor once again filed a motion to dismiss arguing that the amended complaint failed to state a claim for relief under either sections 523(a)(4) or (a)(6), and that the complaint alleged "nothing more than a breach of contract." (ECF No. 32.)

After the parties fully briefed the issues, the court granted the Debtor's motion to dismiss. (ECF No. 49.) In the written minute order, the court laid out the applicable general standards for a Rule 12(b)(6) ruling and the particular elements necessary to state a claim for embezzlement under section 523(a)(4) and for a willful and malicious injury under section 523(a)(6). (*Id.* at 3-4.) The court found that the amended complaint did not state a claim for relief under the current pleading standards because it "merely recites the elements of section 523 claims without supplying factual allegations that make it plausible that the Debtor's alleged interest in the property at issue is sufficient to maintain a claim for embezzlement or willful and malicious injury." (*Id.* at 4.) The court explained, for example, that there were no factual allegations to make it plausible that "the debtor appropriated the creditor's property," which was fatal to both claims. (*Id.* at 4-5.) The court ultimately

determined that, "despite all the labels Plaintiff has added to its claims, it has not alleged anything more than a simple breach of contract action," which is insufficient to state a claim according to the case law cited in the order. (*Id.* at 5 (citing *Schaul v. Ludwig (In re Ludwig)*, 508 B.R. 48, 56 (Bankr. N.D. Ill. 2014) ("[K]eeping money contractually due another is a breach of contract, not embezzlement.") and *Polish & Slavic Fed. Credit Union v. Lemiszka (In re Lemiszka)*, No. AP 19-96032, 2020 WL 7872619, at \*8 (Bankr. N.D. Ill. Dec. 30, 2020) ("[A] claim for breach of contract – even if the breach is allegedly 'intentional' – will not sustain a non-dischargeability objection under section 523(a)(6).")).)   Because this was the first dismissal of Plaintiff's complaint that included a "detailed examination" by the court, the dismissal was without prejudice to filing a second amended complaint. (*Id.* at 5-6.)

On May 12, 2021, Plaintiff made another attempt to state a claim for relief under sections 523(a)(4) and (a)(6) in its second amended complaint. (ECF No. 50.) Although the general framework of the claims remained the same—the Debtor's failure to pay the agreed-upon attorney's fees constituted embezzlement and was a willful and malicious injury—the second amended complaint attempted to address some of the deficiencies the court had previously identified.  For instance, one of the major problems with the previous complaint was the lack of factual allegations to make it plausible that Plaintiff had a property interest in the attorney's fees that were awarded in the referred cases, as opposed to merely a contractual right to payment of a share of those fees.  In an apparent attempt to address this shortcoming, Plaintiff included throughout the second amended complaint the conclusory

allegation that it "had a property interest in 45% of the attorneys' fees awarded" in those cases. (*See id.* ¶¶ 8, 28, 39, 40, 44, 46.)  Plaintiff also added some new factual allegations concerning a dispute over a doctor Plaintiff used for its clients' cases in an effort to establish that the Debtor's retention of the attorney's fees was "based solely on a personal grudge against a doctor" and done with the intent to "monetarily injure Plaintiff." (*Id.* ¶¶ 50-52.)[3]  In response, the Debtor filed his third motion to dismiss to once again argue that Plaintiff failed to state a claim under sections 523(a)(4) or (a)(6). (ECF No. 52.)

After another round of briefing (and a sequence of events in which the court considered, but ultimately denied, the parties' request to convert the motion to dismiss into a motion for summary judgment pursuant to Rule 12(d)),[4] the court issued a memorandum opinion granting the motion to dismiss. (ECF No. 86.)  While acknowledging the additional allegations mentioned above, the court nevertheless concluded that Plaintiff still failed to allege sufficient facts to support its claims.[5]

---

[3] The new allegations setting forth the Debtor's alleged motivation for retaining the attorney's fees was, at least in part, likely in response to the court's comment in the previous minute order that the complaint did not contain "particular allegations to show that [the Debtor] acted with the necessary fraudulent intent when he kept the fees for himself." (ECF No. 49 at 5 (citing *Manny v. Udelhoven (In re Udelhoven)*, No. 19 B 4105, 2021 WL 186985, at *15 (Bankr. N.D. Ill. Jan. 14, 2021) ("For purposes of embezzlement, fraudulent intent is knowledge that the use is devoid of authorization.")).)

[4] See this court's order dated 9/7/2021 (ECF No. 73) for the ruling and pages 2-5 of the memorandum opinion dated 11/12/2021 (ECF No. 86) for a full discussion of this issue.

[5] It should have been readily apparent from the memorandum opinion that the court did not accept the conclusory allegation that Plaintiff "had a property interest in 45% of the attorneys' fees awarded" and instead based its decision solely on the actual factual allegations contained in the second amended complaint.

In particular, on the embezzlement count under section 523(a)(4), the court conducted an extensive survey of the relevant case law and explained how in order to state a claim for embezzlement, the creditor is required to show ownership of the funds allegedly embezzled, which is the critical element that distinguishes an embezzlement from a mere debtor-creditor relationship. (*Id.* at 9-11.)  After carefully reviewing the allegations in the complaint (and noting, by way of example, the types of factual allegations that might have supported an embezzlement claim but were missing from the second amended complaint, such as an allegation that the Debtor kept the fees owed to Plaintiff in a segregated account), the court concluded that Plaintiff had only alleged "a debtor-creditor arrangement" and, therefore, the refusal to turn over a portion of the attorney's fees awards did not constitute embezzlement. (*Id.* at 10-11.)  Having determined that "the well-pleaded allegations in the amended Count I continue to allege only a simple, albeit willful, breach of contract claim," the court found that Plaintiff had failed to state a claim for embezzlement under section 523(a)(4). (*Id.* at 11.)

The court likewise determined that Plaintiff had failed to state a proper claim for relief under section 523(a)(6), finding that the second amended complaint did not plausibly allege a property interest sufficient to support a claim for conversion. (*Id.* at 11-13.)  The court once again found that the allegations concerning the Debtor's refusal to pay the referral fees did not rise above an intentional breach of contract to state an independent tort, and therefore failed to state a claim for relief under section 523(a)(6). (*Id.* at 13-14.)  Despite these continued failures, the court decided to give

Plaintiff one final opportunity to file a further amended complaint "if appropriate." (*Id.* at 14.)

Plaintiff's third amended complaint continues to be based on the same underlying factual premise, namely that the parties entered into a "series of contracts" for the referred workers compensation cases in which the Debtor "promised to pay Plaintiff a share of the fees . . . recovered." (3d Am. Compl. ¶ 3.)  After certain of those cases were resolved, "Plaintiff demanded payment of its 45% of the attorney fees, [but] Debtor refused to pay Plaintiff its contractual portion of the recovery." (*Id.* ¶ 14.)

The third amended complaint contains a single claim seeking a determination that this debt is non-dischargeable pursuant to section 523(a)(4) as a result of the Debtor's alleged embezzlement.[6]  Plaintiff now tries to overcome this court's previous ruling on the embezzlement claim by asserting that "[w]henever a workers compensation case referred to Debtor was settled, 45% of the attorneys' fees awarded became vested as Plaintiff's property." (*Id.* ¶ 8.) In support of this legal conclusion, which the court is not required to accept as true, Plaintiff cites Rule 1.15(e) of the Illinois Rules of Professional Conduct to argue that "Debtor was explicitly required to segregate and hold any disputed attorney fees awarded, elevating the Debtor and Plaintiff's relationship above that of debtor-creditor." (*Id.* ¶¶ 9-10.)  Plaintiff goes on to speculate, "on information and belief," that because the "Debtor's bankruptcy

---

[6] Plaintiff no longer raises a claim under section 523(a)(6) for a willful and malicious injury.

petition does not list a client trust fund containing funds of $46,192.42 or more as an asset . . . the Debtor disbursed $46,192.42 of disputed property from his client trust fund prior to the resolution of the dispute between the Debtor and Plaintiff." (*Id.* ¶ 19.) It is this alleged "distribution . . . of the property in which Plaintiff claims an interest" that Plaintiff contends constitutes an embezzlement. (*Id.* ¶ 20.)

The Debtor has once again filed a motion to dismiss, arguing that the third amended complaint should be dismissed pursuant to Rule 12(b)(6). (ECF No. 90.) In the motion, the Debtor argues, among other things,[7] that Plaintiff's reliance on Rule 1.15(e) is misplaced and that the facts alleged in the complaint "give rise to nothing more than a debtor creditor contractual relationship." (*Id.* at 2-3.) The Debtor requests that the third amended complaint be dismissed with prejudice and that he be awarded attorney's fees and costs pursuant to both Federal Rule of Bankruptcy Procedure 9011 and 28 U.S.C. § 1927 based on Plaintiff's "vexatious perpetuation of a claim without a plausible legal or factual basis." (*Id.* at 8.)

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[7] It is a bit ironic that the Debtor complains in his motion that Plaintiff "is essentially rehashing the failing arguments . . . presented in its amended and second amended adversary complaints," when the Debtor also rehashes some of his arguments from prior motions to dismiss that have been rejected by the court, purportedly "to Avoid the Issue of Waiver of Argument." (ECF No. 90 at 1, 5.) *But see Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990) (It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected.).

*Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The current complaint is now focused on a single claim brought pursuant to section 523(a)(4), which excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Throughout these proceedings, however, Plaintiff has made clear that its claim under section 523(a)(4) is based solely on a theory of embezzlement of the attorney's fees that were allegedly due Plaintiff pursuant to the referral contracts.[8]  In this context, embezzlement is defined as "the fraudulent appropriation of property by a person to whom that property has been entrusted or into whose hands it has lawfully come." *In re Weber,* 892 F.2d 534, 538 (7th Cir. 1989).

As the court made clear in its previous opinion in this case, in order to properly state a claim for embezzlement under section 523(a)(4), the complaint must contain sufficient facts to make it plausible that the property at issue—here the 45% of the attorney's fees awarded in the referred cases—was actually Plaintiff's property. *See, e.g., Freer v. Beetler* (*In re Beetler*), 368 B.R. 720, 727 (C.D. Ill. 2007) ("By definition, before a creditor can make a claim of nondischargeability for embezzlement, she must show that the property allegedly embezzled was her property.  The creditor's ownership of the funds is what distinguishes an embezzlement from a mere debtor-

---

[8] Because Plaintiff's section 523(a)(4) claim continues to be based on an alleged embezzlement, any argument regarding whether there was some sort of fiduciary relationship between the parties is misplaced and need not be considered by the court.

creditor relationship . . . ." (citations omitted)); *Banco Popular, N.A. v. Rodriguez* (*In re Rodriguez*), No. 06-3467, 2007 WL 543750, *5 (Bankr. S.D. Tex. Feb. 15, 2007) ("To constitute embezzlement, the fraudulent appropriation must be 'of another's property.'"). This distinction between whether Plaintiff had an actual property interest in a portion of the fees awarded or merely a contractual right to payment of those fees has been at the center of the court's decisions in this matter and is critical to analyzing Plaintiff's claim of embezzlement. The factual allegations in the previous complaints did not make it plausible that the Debtor misappropriated Plaintiff's property. Instead, they suggested only that the Debtor may have breached the fee-sharing agreement entered into by the parties, which was insufficient to state a claim for relief under section 523(a)(4). Plaintiff's latest attempt fares no better.

As an initial matter, it is clear from a review of the third amended complaint that the crux of Plaintiff's claim remains the alleged breach of contract. Plaintiff alleges, among other things, that the parties "entered into a series of contracts," (3d Am. Compl. ¶ 3), that the "Debtor promised to pay Plaintiff a share of the fees," (*id.*), that "[t]he Contracts . . . provided that Plaintiff would receive 45% of any attorney's fees awarded to the Debtor," (*id.* ¶ 4), and that the "Debtor refused to pay Plaintiff its contractual portion of the recovery," (*id.* ¶ 14). With its third amended complaint the Plaintiff attaches the actual contracts as an exhibit, which the court will consider to be "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Given these allegations, it is difficult to see how Plaintiff's claim could be considered anything other than a breach of contract claim.

In its third amended complaint, Plaintiff alleges that whenever a "case referred to Debtor was settled, 45% of the attorney's fees awarded became vested as Plaintiff's property." (3d Am. Compl. ¶ 8.)  Plaintiff goes on to cite Rule 1.15(e) of the Illinois Rules of Professional Responsibility, which it claims shows that the "Debtor was explicitly required to segregate and hold any disputed attorney fees awarded, elevating the Debtor and Plaintiff's relationship above that of debtor-creditor." (*Id.* ¶ 10.)  These allegations are not factual allegations, but instead represent legal conclusions which are not simply accepted as true by the court when ruling on a Rule 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  And for good reason, as this case demonstrates, because a legal conclusion found within a complaint is not always an accurate statement of the law.

Rule 1.15, which is entitled "Safekeeping Property," can generally be described as the rule of professional responsibility governing the creation and use of a client trust account.  Although it is a lengthy and complex rule, it starts with this simple premise: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." Ill. Sup. Ct. R. of Pro. Conduct 1.15(a).  Thus, by its very terms, Rule 1.15 applies to property that is in the lawyer's possession but belongs to either the client or a third person.  Rule 1.15 does not by itself create any property rights, it simply dictates the requirements and procedures for a lawyer to follow in order to safeguard someone else's property. *See id.* 1.15, cmt. 1 ("A lawyer should hold property of others

with the care required of a professional fiduciary."); *see also In re Mulroe*, 2011 IL 111378, ¶ 20 ("[T]he responsibility of holding client funds is a serious fiduciary duty and should not be treated lightly.  We have, on more than one occasion, emphasized the importance of this responsibility.").

With that general understanding of the purpose of Rule 1.15, the court now turns to Plaintiff's specific argument, which relies on subsection (e): "When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved." Ill. Sup. Ct. R. of Pro. Conduct 1.15(e).  Plaintiff argues that this provision required the Debtor to "segregate and hold any disputed attorney fees awarded." (3d Am. Compl. ¶ 10.)  A clever argument, to be sure, but ultimately one that the court does not find persuasive as it presupposes the very fact Plaintiff needs to allege—that Plaintiff had a property interest in a portion of the attorney's fees awarded to the Debtor.

> The commentary to Rule 1.15(e) provides some additional clarification:
>
> Paragraph (e) also recognizes that third parties may have lawful claims against specific funds or other property in a lawyer's custody, such as a client's creditor who has a lien on funds recovered in a personal injury action.  A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client.  In such cases, when the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved.

Ill. Sup. Ct. R. of Pro. Conduct 1.15, cmt. 4.  That illustrative example is quite different from the underlying factual scenario in this case, and there is nothing in the text of Rule 1.15(e) or in the commentary which suggests that Rule 1.15(e) requires a

lawyer to place into his client trust account the fees payable to another attorney as the result of a referral agreement. Nor does Plaintiff cite any authority applying Rule 1.15(e) in that manner. Indeed, another part of the commentary appears to explicitly carve out a dispute over attorney's fees from the scope of Rule 1.15. *See id.*, cmt. 3A ("The reasonableness, structure, and division of legal fees are governed by Rule 1.5 and other applicable law."). Moreover, while Rule 1.5(e)—which the parties, all lawyers, are certainly familiar with—sets out the parameters for a "division of a fee between lawyers who are not in the same firm," it makes no mention or cross-reference to the client trust account provisions found in Rule 1.15. *Id.* 1.5(e). Taken together, the court finds no basis to conclude that Rule 1.15(e) of the Illinois Rules of Professional Responsibility required the Debtor to segregate and place into his client trust account the amount of attorney's fees that Plaintiff believes it is owed based on their referral agreements. Accordingly, the alleged failure to do so cannot form the basis for a claim of embezzlement.[9]

## CONCLUSION

Based on the foregoing, the court once again finds that Plaintiff has failed to state a claim for relief under section 523(a)(4) based on embezzlement, and the motion to dismiss will be granted. The Debtor asks that the dismissal be with prejudice and, other than urging the court to deny the motion to dismiss, Plaintiff has not addressed

---

[9] The court likewise rejects the speculative allegation that the Debtor initially placed the attorney's fees that are in dispute into his client trust account and then subsequently disbursed those funds prior to a resolution of the dispute. (*See* 3d Am. Compl. ¶¶ 19, 23.) Such an allegation is based on the faulty legal premise regarding Rule 1.15(e) discussed above and is insufficient to state a claim for embezzlement. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

this request or asked for leave to replead. Even if such a request had been made, however, the court believes that a dismissal with prejudice is appropriate where, as here, Plaintiff has "failed to remedy the deficiencies in their pleadings despite having been given multiple opportunities to do so." *Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019). Moreover, at this point, the court finds that another amendment to the complaint would be futile and would unduly prejudice the Debtor. *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (discussing the "broad discretion to deny leave to amend" under these circumstances); *see also Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) ("The plaintiff's lawyer has had four bites at the apple. Enough is enough.").

As a final matter, with no real discussion of the applicable standards, the Debtor requests sanctions against both Plaintiff and its counsel pursuant to Rule 9011 and 28 U.S.C. § 1927 (incorrectly cited as 11 U.S.C. § 1927). That request is denied. The request under Rule 9011 is procedurally improper for a number of reasons, including the fact that it was not brought by separate motion. *See* Fed. R. Bankr. P. 9011 ("A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004."). This is not merely a suggestion, and in fact "[a] court abuses its discretion if it permits a motion for sanction to be made in conjunction with another motion." *In re Ryan*, 411 B.R. 609, 616 (Bankr. N.D. Ill. 2009) (citing *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1058 (7th Cir.1998)). Likewise, there has been no showing that sanctions

against counsel would be appropriate under section 1927, which provides that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Vexatious-litigation sanctions under § 1927 require a showing of either subjective or objective bad faith." *4SEMO.com Inc. v. S. Illinois Storm Shelters, Inc.*, 939 F.3d 905, 913 (7th Cir. 2019). There is nothing in the record to suggest that counsel, who raised a novel theory for his client's section 523(a)(4) claim and decided not to continue to pursue the section 523(a)(6) claim, has acted in bad faith.

A separate order will be issued concurrent with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: March 9, 2022

ENTER

_____
Thomas M. Lynch
United States Bankruptcy Judge